UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CHRISTIAN PATTERSON,

|  |  |  |
|---|---|---|
| | Plaintiff, | 14-cv-5330 (PKC) |
| -against- | | MEMORANDUM<br>AND ORDER |

THE CITY OF NEW YORK, DETECTIVE
JOHN FAHIM, CAPTAIN WILLIAM RUSSO,
DETECTIVE JONMICHAEL RAGGI,
DETECTIVE MICHAEL J. ZAK, DETECTIVE
ANTHONY RICCI, SGT. IGNAZIO CONCA,
DETECTIVE CHRISTOPHER BRUNO,
DETECTIVE ROBERT WOODHOUSE,
DETECTIVE MATTHEW EDELMAN and
POLICE OFFICER STEVEN SPINELLI,

                                    Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiff Christian Patterson claims that defendants violated his civil rights when

they allegedly used excessive force on him at the time of his arrest, resulting in injury to his ribs

and his left hand.  Pursuant to 42 U.S.C. §§ 1981 and 1983, he contends that the use of force

violated his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and

separately asserts that certain defendants failed to intervene in the incident and are liable on a

supervisory basis.  He also asserts that the defendants acted unlawfully pursuant to a municipal

policy, custom or practice, and that the City of New York (the "City") is liable pursuant to

Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

Discovery is now closed, and the individual defendants, other than Detective

Fahim, Detective Raggi and Captain Russo, move for summary judgment in their favor pursuant

to Rule 56, Fed. R. Civ. P.  Captain Russo moves for summary judgment as to all claims except

the failure to intervene claim.  Defendant City of New York also moves to dismiss Patterson's

Monell claim pursuant to Rule 12(b)(6), Fed. R. Civ. P.  On December 1, 2015, this Court heard

argument on the motion.  For the reasons explained, the motions are granted.  The claims against

Detectives Fahim and Raggi will proceed to trial, as will the failure to intervene claim against

Captain Russo.

BACKGROUND.

On June 5, 2014, a search warrant was executed on Patterson's apartment at 19

Wood Court in Staten Island.  (Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1.)  The warrant authorized law

enforcement to search for and seize evidence related to the sale and possession of heroin and

other controlled substances.  (Passeser Dec. Ex. A.)

While the warrant was being executed, Patterson was present in the first-floor

living room, as was non-party witness Laurie Sperring.  (Def. 56.1 ¶ 2.)  Patterson alleges that

during the search, an officer placed a knee on his hand while he was handcuffed, and that the

officer pressed down on Patterson with "the full weight of his body."  (Third Amended

Complaint (the "Complaint") ¶ 22.)  The defendants contend that the contact lasted for

approximately 15 seconds, but Patterson contends that it lasted for a longer period of time.  (Def.

56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3.)  Patterson alleges that the incident caused "severe injuries" to his

hand and ribs.  (Compl't ¶ 22.)

Patterson testified in his deposition that defendant Fahim directly used excessive

force against him, whereas Sperring testified in her deposition that defendant Raggi was the

officer who used force on Patterson.  (Def. 56.1 ¶ 6.)  Patterson does not contend that any other

individual defendant directly used force against him.  (Def. 56.1 ¶¶ 7-14; Pl. 56.1 Resp. ¶¶ 7-14.)

According to the defendants, at the time that force was used against Patterson, only Fahim, Raggi and defendant William Russo were in the vicinity of Patterson.  (Def. 56.1 ¶ 15.)  The other individual defendants contend that they were spread throughout the premises at the time.  (Def. 56.1 ¶¶ 16-19.)  Patterson disputes these accounts, not with a different version of events, but on the grounds that the defendants' recollections are not credible.  (Pl. 56.1 Resp. ¶¶ 16-19.)  At oral argument, acknowledged that there is no evidence to support his contention that they were near Patterson at the time force was used.

Patterson commenced this action on July 16, 2014, and filed the Third Amended Complaint ("the Complaint") on March 10, 2015.  (Docket # 1, 85.)  Count One is brought pursuant to 42 U.S.C. §§ 1981 and 1983, and alleges that defendants deprived him of the protections guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution when they used excessive force against him.  (Compl't ¶¶ 29-35.)  Count Two alleges that defendants failed to intervene when they observed unconstitutional force being used against Patterson, and Count Three alleges supervisory liability.  (Compl't ¶¶ 36-43.)  Count Four alleges that the defendants acted pursuant to the City's municipal policy or custom of subjecting citizens to excessive force and making "perjurious statements with regard to controlled substances," among other types of misconduct.  (Compl't ¶¶ 44-61.)

RULE 56 STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the court must "construe the facts in the light most favorable to

the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted). It is the initial burden of the movant to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief, and the evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted); see also Anderson, 477 U.S. at 249-50 (summary judgment "may be granted" if the opposing evidence is "merely colorable" or "not significantly probative") (citations omitted); Fischer & Mandell LLP v. Citibank, N.A., 632 F.3d 793, 802 (2d Cir. 2011) (granting summary judgment in part because opposing party was "unable to point to any concrete evidence" that contradicted documents offered in support of motion). An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission. Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (internal quotation marks and citation omitted).

DISCUSSION

> I.       Patterson's Claim for the Direct Use of Excessive Force Is Dismissed as to All
>          Defendants but Fahim and Raggi.

All defendants but Fahim and Raggi move for summary judgment on Patterson's

claim for the direct use of excessive force.  "An individual may be held liable under §§ 1981 and

1983 only if that individual is personally involved in the alleged deprivation."  Littlejohn v. City

of New York, 795 F.3d 297, 314 (2d Cir. 2015) (quotation marks omitted).  Personal

involvement may arise through direct participation in the claimed conduct, a failure to intervene,

or the creation of an unconstitutional policy or practice.  Id.

Defendants have come forward with evidence that Fahim and Raggi are the only

defendants who could have directly used force against Patterson.  In his deposition, Patterson

testified that only defendant Fahim directly utilized force against him during the time that the

search warrant was being executed.  (Patterson Dep. 73-75.)  Sperring testified in her deposition

that defendant Raggi used force against Patterson's back and hand when handcuffing him.

(Sperring Dep. 21-22.)  Patterson does not contend that any other defendant directly used

excessive force against him.

Because the record identifies Fahim and Raggi as the only individuals who may

have directly exercised force against Patterson, and no other defendant is identified as having

done so, a reasonable jury could not conclude that any other defendant directly used excessive

force against Patterson.  Summary judgment is therefore granted as to all defendants but Fahim

and Raggi as to the direct use of excessive force.

II.    Defendants' Summary Judgment Motion Is Granted as to Patterson's Failure to Intervene Claim.

Defendants move for summary judgment as to the failure to intervene claim against defendants Zak, Ricci, Bruno, Woodhouse, Edelman, Ricci, Spinelli and Conca.[1]  They assert that these defendants were not in Patterson's vicinity at the time that he was allegedly subjected to excessive force.  Because the plaintiff has not come forward with evidence that places them near the alleged use of force, no reasonable jury could conclude that they were in a position to intervene.  The defendants' summary judgment motion is therefore granted.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used . . . ."  Id.  "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."  Id.

Defendants Zak and Ricci testified in their depositions that they were going to the apartment's second floor to conduct a sweep at the relevant time.  (Def. 56.1 ¶ 16.)  Zak testified that he observed Raggi and Fahim attempting to cuff Patterson, but that he only had "a quick look" and was focused on securing the unit's second floor.  (Zak Dep. 29-31.)  Ricci testified that he observed Patterson lying on the floor, without handcuffs, at the time that he was going to the second floor.  (Ricci Dep. 52-53.)  Patterson testified in his deposition that after the incident, he

---

[1] The defendants do not move for summary judgment as to defendant William Russo on the failure-to-intervene claim.

observed "a couple officers" nearby, and stated that "[a]pparently they were upstairs" when force was being used.  (Patterson Dep. 78-79.)

Defendants Edelman, Bruno and Woodhouse testified that they were attempting to subdue Patterson's pit bull at the time that force allegedly was used.  (Def. 56.1 ¶ 17.) Edelman testified that the first thing he saw on the premises was a pit bull "charging" at him, and that he attempted to contain the dog by using a canine noose.  (Edelman Dep. 38, 40-41.)  He testified that he backed the dog into the apartment kitchen and onto an outside balcony, and then remained in the kitchen area to guard the dog.  (Edelman Dep. 41-43.)  Edelman testified that he briefly observed Patterson being handcuffed on the living room floor, and that he was not resisting arrest or being assaulted.  (Edelman Dep. 44-45.)  Bruno testified that the dog was "running around kind of frantic," and that he used items of living room furniture to "funnel it into the kitchen . . . ."  (Bruno Dep. 66-67.)  He testified that he observed Patterson in handcuffs at some point.  (Bruno Dep. 69, 71.)  Woodhouse testified that a pit bull was "barking, coming at us, and it was basically going back and forth trying to, you know, get through us," and that it took approximately five minutes to subdue the dog.  (Woodhouse Dep. 43-44, 46.)  Woodhouse testified that he observed Patterson and Sperring on the premises, and that at one point he saw that Patterson was in handcuffs.  (Woodhouse Dep. 46.)

Conca testified in his deposition that while the search warrant was being executed, he was in the yard area behind the apartment.  (Def. 56.1 ¶ 18; Conca Dep. 40-41.)  He testified that when he later entered the apartment, Patterson was seated on the living room couch, in handcuffs.  (Conca Dep. 48.)

Defendant Spinelli testified at his deposition that as he was about to enter the premises, other officers told him to retrieve a fire extinguisher, which is commonly used to corral

and intimidate aggressive dogs.  (Def. 56.1 ¶ 19; Spinelli Dep. 30, 32.)  When he later entered

the apartment with the extinguisher, "everything was fine":  "People were sitting down on the

couches and I remember a dog was in the kitchen blocked off."  (Spinelli Dep. 30.)

   In opposition to the defendants' motion, Patterson attacks the credibility of the

officers' testimony, arguing that "these defendants have little if any regard for the obligations of

the oaths they took at their depositions.  . . .  They will lie to protect each other, and they will lie

to protect themselves.  . . .  The reason one knows that these defendants were not in close

proximity to the plaintiff is because they say so."  (Opp. Mem. at 2; see also Pl. 56.1 Resp. ¶¶

16-19.)  Patterson also argues that when questioned at deposition, these defendants had limited

recollection of their disciplinary histories, which further undermines their credibility.  (Opp.

Mem. at 3-5; Pl. 56.1 Supp. Resp. ¶¶ 29-40.)

   Patterson's conclusory arguments are insufficient to defeat defendants' summary

judgment motion.  At the December 1 argument, Patterson's counsel acknowledged that there

was no evidence contradicting the defendants' recollections as to their locations at the time

excessive force allegedly was used.  "In order to defeat a motion for summary judgment

supported by proof of facts that would entitle the movant to judgment as a matter of law, the

nonmoving party is required . . . to set forth specific facts showing that there is a genuine issue of

material fact to be tried."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

The non-movant "may not rely simply on conclusory statements or on contentions that the

affidavits supporting the motion are not credible."  Id.; see also McPherson v. New York City

Dep't of Educ., 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to

defeat a motion for summary judgment."); Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002)

(the non-moving party must "'by [his or] her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

For example, in U.S. Bancorp Oliver-Allen Tech. Leasing v. Hall, Dickler, Kent, Goldstein & Wood, LLP, 2005 WL 1875459, at *4 (S.D.N.Y. Aug. 8, 2005), the non-movant argued that summary judgment should be denied because an affiant's credibility could only be tested at trial. Then-District Judge Lynch concluded that this argument "egregiously failed" to defeat the motion, absent citation to evidence that undermined the affiant's version of events. Id. As here, the non-movant had "not challenged the credibility of this testimony, apart from conclusory allegations in its legal briefing, nor come forward with independent facts . . . to put this [testimony] into dispute. This will not suffice to create a genuine issue of material fact on summary judgment." Id. "As the Second Circuit put it in Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), '[w]hen the [summary judgment] motion is made, . . . [t]he time has come 'to put up or shut up.'" Id.

Because the defendants have come forward with evidence that they were not in the vicinity of Patterson at the time that he allegedly was subjected to excessive force, and because Patterson raises only conclusory arguments in opposition, Patterson has failed to satisfy his burden to oppose summary judgment. The motion of defendants Zak, Ricci, Conca, Bruno, Woodhouse, Edelman and Spinelli is therefore granted as to the duty to intervene claim.

III.    Defendants' Summary Judgment Motion as to Supervisory Liability Is Granted.

Defendants move for summary judgment on Patterson's supervisory liability claim against defendants Conca and Russo. They contend that because Conca was unaware of his subordinates' alleged actions, and because Russo was not a direct supervisor of defendants Fahim or Raggi, no reasonable jury could find them liable in a supervisory capacity. Because

Patterson has not come forward with evidence sufficient to defeat the defendants' motion, the motion is granted.

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002). Rather, supervisory liability may arise if a defendant participated directly in the alleged constitutional violation, failed to remedy a wrong after learning of it, created a policy or custom that led to the wrong, was grossly negligent in supervising subordinates, or exhibited deliberate indifference to an unconstitutional act. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); see also Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014) ("[A] plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation.").

    A. Conca.

Defendant Conca is the direct supervisor of defendants Fahim and Raggi. (Def. 56.1 ¶ 24; Conca Dep. 28, 30.) As noted, Conca testified that during the time that force allegedly was used against Patterson, he was in the yard area behind the apartment, and that when he entered the premises, Patterson was seated on the living room couch in handcuffs. (Conca Dep. 40-41, 48.) Conca testified that he had never reprimanded either Fahim or Raggi for their performance. (Conca Dep. 28-30.) He argues that, based on this record, no reasonable jury could find for Patterson on his supervisory liability claim.

In opposition, Patterson argues that a reasonable jury could conclude that Conca is liable in his supervisory capacity based on his role as a supervisor. (Opp. Mem. 5.) He argues, "If [Conca] was not at the place where plaintiff was injured, he should have been." (Opp. Mem. 5.) Again, Patterson fails to cite any evidence to defeat summary judgment. In essence, this amounts to an argument that Conca should be subject to supervisory liability solely

because Fahim and Raggi were his subordinates.  But this is contrary to the law of this Circuit, which instructs that a supervisory may not be liable "merely because his subordinate committed a constitutional tort," Poe, 228 F.3d at 140, and that a plaintiff must establish that a supervisor's actions were "the proximate cause of the plaintiff's constitutional deprivation," Raspardo, 770 F.3d at 116.  See also Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (supervisory liability "cannot rest on respondeat superior.").  Patterson does not cite to evidence that Conca failed to supervise subordinates or to act on information that unconstitutional acts were occurring.  Poe, 228 F.3d at 140.

On this record, no reasonable jury could conclude that Conca has supervisory liability over the alleged conduct of Fahim and Raggi.  Defendants' motion is therefore granted.

B.  Russo.

Defendant Russo is the commanding officer of the Staten Island gang squad. (Russo Dep. 18.)  He is Conca's immediate supervisor, but also has general supervisory authority over the other defendants.  (Russo Dep. 23.)  Defendants' submissions do not further explain his role at the time that the search was executed, but they do not dispute that he was in the vicinity of Fahim and Raggi at the time that force was used on Patterson, and have not moved for summary judgment as to Russo on the failure to intervene claim.

Defendants contend that the supervisory liability claim against Russo is only cognizable as a failure-to-intervene claim, and that no evidence supports a claim that Russo failed to properly train or discipline any officers concerning the use of force.  In opposition to the motion, Patterson notes only that Russo was in the vicinity of the alleged use of force, and that he was the overall supervisor of the warrant's execution.  (Opp. Mem. 6.)  Russo's proximity is relevant to the failure-to-intervene claim, but does not go toward his liability as a supervisor.  As

noted, a defendant's position in the chain of command is insufficient evidence to establish

supervisory liability.  Hernandez, 341 F.3d at 144.

        Because the evidence cited by Patterson is relevant to a defendant's failure to

intervene but not as to supervisory liability, he has failed to defeat the defendants' motion for

summary judgment.  Defendants' motion is therefore granted as to the supervisory liability claim

against Russo.

      IV.    Patterson's Monell Claim Is Dismissed Pursuant to Rule 12(b)(6).

        The defendants move to dismiss Patterson's Monell claim pursuant to Rule

12(b)(6).  In an Order of November 7, 2014, this Court stayed discovery as to Patterson's Monell

claim, pending an ultimate determination of liability as to the excessive force claim.  (Docket #

13.)  Because the Complaint does not plausibly allege that the defendants acted pursuant to an

official policy, practice or custom of the City, the motion to dismiss is granted.

      A.  Rule 12(b)(6) Standard.

        To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  Legal conclusions are not entitled to the presumption of

truth, and a court assessing the sufficiency of a complaint disregards them.  Id.  Instead, the

Court must examine only the well pleaded factual allegations, if any, "and then determine

whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal is appropriate

when 'it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a

matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SB, 763 F.3d 198, 208-

09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

B.  <u>Patterson Does Not Plausibly Allege Municipal Liability.</u>

In <u>Monell</u>, the Supreme Court held that a municipal organization may be held liable under section 1983 only if the plaintiff's injury is the result of municipal policy, custom, or practice.  436 U.S. at 694; <u>see also</u> <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 121 (1988) (a municipality may "be sued directly if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or through a "'governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.") (quotation marks omitted).  "Absent such a custom, policy, or usage, a municipality cannot be held liable on a <u>respondeat superior</u> basis for the tort of its employee."  <u>Jones v. Town of E. Haven</u>, 691 F.3d 72, 80 (2d Cir. 2012).

The Complaint's allegations as to municipal liability are conclusory and irrelevant.  It alleges that the New York Police Department ("NYPD") has "procedures, customs, usage, practices, rules and/or regulations" that include but are not limited to "subjecting citizens to excessive force, arresting people without probable cause and engaging in a practice of falsification to conceal their abuse of authority."  (Compl't ¶ 46.)  The Complaint alleges that these practices include "testilying" (which the Complaint defines as lying under oath), "flaking" (which the Complaint defines as "perjurious statements with regard to controlled substances") and "collars for dollars" (defined as making false arrests to obtain overtime compensation). (Compl't ¶ 46.)  It alleges that the NYPD has a policy of inadequate screening, hiring and training.  (Compl't ¶¶ 47, 59.)  As supporting evidence, it cites "numerous" civil actions filed against the NYPD, as well as the criminal conviction of former NYPD Commissioner Bernard Kerik on corruption-related charges.  (Compl't ¶¶ 47-54.)  The Complaint also recites civil

actions brought against defendant Fahim and administrative complaints filed against other defendants.  (Compl't ¶¶ 55-56.)

When a plaintiff alleges municipal liability, "allegations which are nothing more than broad, simple and conclusory statements are insufficient."  Spear v. Town of W. Hartford, 954 F.2d 63, 67 (2d Cir. 1992) (quotation marks omitted).  First, Patterson does not even bring claims directed to a false arrest or the falsification of evidence, rendering his Monell allegations on those matters largely irrelevant.  His allegations as to a municipal policy or practice concerning excessive force and the failure to train and screen employees are not supported by factual allegations.  Iqbal, 556 U.S. at 679.  Rather, he relies on unproved allegations set forth in a litany of unrelated civil actions, as well as certain criminal cases with subject matter unrelated to the defendants' alleged conduct, including the homicide conviction of a former Brooklyn narcotics officer and Kerik's criminal conviction on corruption-related charges.  (Compl't ¶¶ 51-52.)  These allegations do not support a claimed municipal policy to use excessive force, or go toward an informal custom of using such force.

Moreover, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train."  Connick v. Thompson, 563 U.S. 51, 61 (2011).  A failure to train municipal employees may rise to the level of an official policy "[i]n limited circumstances," when such a failure amounts to "deliberate indifference" to the rights of citizens.  Id.  "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."  Id.  Aside from listing assorted civil actions, the Complaint contains no factual allegations that support a failure-to-train claim.

Because the Complaint does not plausibly allege municipal liability, the defendants' motion to dismiss the <u>Monell</u> claim is granted.

CONCLUSION.

Summary judgment is granted to defendants Russo, Zak, Ricci, Conca, Bruno, Woodhouse, Edelman and Spinelli on Patterson's claim asserting the direct use of excessive force.  Summary judgment is granted to defendants Zak, Ricci, Conca, Bruno, Woodhouse, Edelman and Spinelli as to the failure to intervene claim, and to defendants Conca and Russo on the supervisory liability claim.  The City's Rule 12(b)(6) motion is granted as to the <u>Monell</u> claim.  The Clerk is directed to terminate the motion (Docket # 148), and to amend the caption to reflect that defendants Fahim, Raggi and Russo are the only remaining defendants in this case.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       December 8, 2015

- 15 -